The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Good morning. Let's get on. I'm recording in progress together with Judge Cain. Oh, you'll be your panel on this base. United States of America versus Jason Sarabia. Your first one is May it please the court, Kristen Kimmelman for Jason v. Sarabia. Mr. Sarabia raises multiple challenges to his convictions and to his sentences. I would like to address multiplicity first. Mr. Sarabia was convicted in four convictions, four counts based on the conduct relating to two phones. He should have received only one conviction per phone. And that's because the possession conviction is a lesser included of the receipt conviction. Many circuits have already held that as long as the same conduct is involved, then the possession of child pornography offense is a lesser included of receipt. And that's because once an item is received, it is necessarily possessed. And the government didn't contest this legal reasoning in its brief. Instead, the government focuses on whether or not the same conduct was involved for these two convictions per phone. And it was. And that is for two different reasons. The first reason is focusing on the unit of prosecution involved in each offense. For the receipt offense, it's when the item is received, that is the unit of prosecution, an individual transaction resulting in that receipt of the child pornography. But it's different for the possession offense. The unit of prosecution for that is the possession of a matter containing the child pornography, in this case, each phone. And this court has held in Werner that a conviction can be based on each matter, each device in this case. And as long as there were other transactions, separate transactions, resulting in the child pornography being on each device. But this court hasn't approved of multiple possession convictions for one device. So when a child pornography image was received on the Samsung and CTE phone, Mr. Sarabia was necessarily possessing at that point, a device containing that child pornography. The second reason why... What's your take on the case called Winstead? I believe Winstead was an incorrect decision that didn't closely analyze the units of prosecution or the burden. Also, I think a distinguishing factor in Winstead is that Mr. Winstead did not bring this multiplicity problem to the court and the government's attention early on, whereas Mr. Sarabia did. Instead, Mr. Winstead raised it at sentencing when there was no opportunity for the government to do so. And the government chose to allow the government or the court to tailor its case or the jury instructions to require separate convictions based on distinct conduct, which is what Mr. Sarabia asked for in his jury instructions. And the government chose to prosecute this case in a manner with a very broad indictment, covering a swath of dates for the receipt counts and then using the same evidence, those thumbnails, to be the basis for the possession counts. And that's clear from the grand jury transcript as well as the prosecution's argument. And there was no instruction to the jury to make sure those offenses were separate, if they even could have been because of the unit of prosecution being what it is. There were how many files? I'm sorry, I don't remember. How many files at issue in this case? So there were 77 child pornography images on the ZTE phone, I believe, and a little over 1,000 on the Samsung phone. So if the counts had been specifically connected to specific files, I think we would not have a problem here? I think we still would have a problem because the possession is based on possessing a matter containing that child pornography. So once an item of child pornography is received on that phone, then Mr. Sarabia would be necessarily possessing a matter, that phone containing the child pornography. But that question was not squarely presented here because the indictment wasn't specific about particular images. And of course, in this case, those thumbnails were generated when the folder was open. And so it wasn't individual generations of a thumbnail, but by clicking on each image, for example. Instead, it was clicking on a folder that then generated these images. And so for those reasons, the counts are multiplicitous per phone. And if the court finds that the evidence is otherwise sufficient and the convictions remain, then the remedy would be to vacate the possession counts, the lesser included counts. And we also ask for it to be sent back for resentencing because it's not obvious the court would have imposed the same aggregate 285 months if those possession counts would not have stand because of the way the court announced the sentence during the sentencing hearing. And so if there are no other questions about multiplicity, I'll turn to the sufficiency of the evidence. To stay on Double Jeopardy for a brief moment, I think your theory is it would not have been possible for your client to have been indicted on either knowing or I'm trying to think of which one you're focused on. You could not have had a count for each file. It's only for each device. Is that sort of the idea? Or possession. For received, I think there could have been a count for each transaction resulting in those files being received, but not for possession. Okay, so you're focused on possession. Sorry. So your theory is when you have all these different files, I think you've said something in the four-digit range. Nevertheless, you could not have brought more than one possession count for each device. Correct, and that is in Werner and Plank, I believe are the police court's cases that set out that unit of prosecution test. And I think even if the court were to disagree with me on that argument, then there is the other argument about how the prosecution chose to prosecute this case using a bundle of evidence to sustain both counts and not delineating either an argument or with jury instructions or, of course, with the indictment that these counts were, in fact, based on different acts. And so because of that, those counts are multiplicitous. With regard to sufficiency of the evidence, this, of course, is a highly fact-intensive inquiry, and this case has unique facts, primarily because of the way those thumbnails are generated. It's not a typical case that this court has seen before where the thumbnails were generated on the computer or the phone when a website was visited. It's different in that the thumbnails were generated when a folder that already existed on the phone was open, and then essentially it sounds like a gallery of images would have appeared on the small smartphone screen, and we don't know whether any of those thumbnails were actually clicked on to be viewed in a bigger image, and we don't know whether the phone user actually saw those thumbnails when they were being generated. One of our arguments against sufficiency is that you cannot receive something from yourself. To receive is to accept or to take possession of, and so if those thumbnails are being generated by the phone that Mr. Sarabia already had, then he's not actually receiving the thumbnails. And so then on appeal in the government's brief, they point to, instead, those main images because there was testimony that, in order for the thumbnail to be generated, those main images in the folders had to have existed on the phone, but we don't know enough about those main images to sustain convictions. We don't know when they got to the phone. We don't know how they got to the phone. We don't know if they were ever opened, those main images, because, again, the thumbnails just opened when the folder is open, and we don't know that information that is critical for, would be critical to sustain the conviction simply on those main images, and that wasn't a theory that was presented to the jury, focusing on that data, and this case doesn't have a lot of the information other cases do to support knowledge about thumbnails, such as search history that indicates the user was looking for child pornography, admissions of seeking out child pornography, membership to a fee child pornography site that some of the images match. We don't have that type of information from which knowledge about these specific thumbnails or even the main images could be inferred, and so that is why these convictions are insufficient. If the court has no other questions about sufficiency, I'll go to the association ban. So Mr. Sarabia challenges the ban of his right to freely associate unsupervised with his minor children if he gets released that early or his minor grandchildren. We believe this condition is right because the imposition of it is mandatory, and it is sufficiently likely that he will be released at a point when his two sons that he is in contact with have minor children, and when someone gets released from prison, a prime resource for them to be reintegrated into society is to live with their families, and if he cannot have unsupervised association with his own minor grandchildren, that would make living in the home of one of his sons extremely difficult, and when the court engages in an analysis of whether the condition was narrowly tailored, you know, it's a weighing of protecting the public against the defendant's right to this free association, and here there was no evidence of any physical contact offense, and the government actually left Mr. Sarabia in his home with his own minor child for about eight months between the date when the phones were seized to the date in the indictment. That certainly doesn't suggest that there was a concern he might act inappropriately with a minor present, and so the condition simply is not narrowly tailored to the facts in this case, and if for some reason the court doesn't agree with us on that, then we would at least ask for the condition to be remanded, faked and remanded to the court for factual findings because the court didn't make any factual findings despite Mr. Sarabia's request for those, and it's not obvious from the record whether that's supported. If the court has no questions about the association ban, I will move on to the distribution enhancements and the reduction that Mr. Sarabia argues for. I think this is another issue where the facts of this case are important. The convictions, again, were based on those two phones. The distribution count was not found. He was not found guilty of that by the jury, and the government ultimately dismissed. The distribution count was related to files that the FBI downloaded from the IP address that was related to Mr. Sarabia, but there was no evidence linking those images that Mr. Sarabia had on his phone to the images that the FBI downloaded, and so he was not found guilty of that offense. It was dismissed. The court, in imposing the distribution enhancement, still relied on those files, but we maintain there was not... Oops, sorry. Excuse me. To be clear, still relied on the files that the FBI downloaded, thinking that those were also the ones at basis in the counts of conviction of two to five, but they weren't. The government clarified that for the court, and there's not a preponderance of evidence that Mr. Sarabia knowingly distributed those files. We don't know what his flood settings were. Flood was the peer-to-peer program. We don't know if they were set to share. We don't know that he knew that... which the government alleges that once an image was being downloaded on the peer-to-peer app, that it was automatically being distributed to someone else. That exists in some cases, but we don't know that that existed here, and the flood peer-to-peer information that was available from the forensic report on the phone doesn't match up with the images that the government, the FBI, was downloading from his phone, so the evidence is lacking of that mens rea, which is necessary for the distribution enhancement, and while the government may be correct in many circuits of health, mens rea isn't a part of whether the conduct is limited to receipt for the reduction. Again, Mr. Sarabia's conduct in the offenses of conviction was related to those phones and not to the FBI downloads from the IP address, which would be relevant conduct, which would require mens rea in order for that to be a criminal conduct for relevant conduct in honors of time. Thank you, Ms. Cohn. Mr. Richter? May it please the court, Zachary Richter for the United States. I'll start with the sufficiency issue by pointing out that Sarabia was the only user of two separate phones, both of which contained child pornography. He knew how peer-to-peer file sharing worked on those phones. He opened folders that contained child pornography on those phones. He downloaded and viewed files with men rea with names indicative of child pornography on both of those phones. And the FBI was able to download child pornography from Sarabia's IP address, which both of those phones were connected to. So with all of this evidence in front of it, that totality of evidence, the jury could reasonably conclude that Sarabia knowingly received and knowingly possessed child pornography. He was not somehow the victim of a computer's inner workings. I'll begin with some of the points that defense counsel made. First about the thumbnail images. And when we think about the thumbnail images, the important part to realize is that each of those thumbnails represents a file that was in a folder that Mr. Sarabia as the exclusive user of the phones must have opened. So we know that he opened the folders that contained those files because that's how the thumbnails came to be to begin with. And there was ample testimony at trial from which the jury could conclude that when Mr. Sarabia saw those thumbnail images on his phone, that those were large enough to view. That's it, 1865 and 66 of the record, 1879 and 80 of the record, 1886 and 1890 of the record. In all those places, the forensic examiner gave testimony that the thumbnails were big enough for a user to see that they were child pornography. In addition, the jury had before it several exhibits, most notably, I believe, exhibit 26, where it could see what the phone looked like with thumbnail size images on it. And the jury also had in front of it the phones themselves and could see how big the phones were. So with all of that evidence in front of it, the jury could readily conclude that the images, those thumbnail images, when they popped up when Mr. Sarabia opened the folders containing them, that those thumbnail images were large enough for him to discern that these were images of children lewdly and lasciviously displaying their genitals or engaged in conduct with adults. And if the court will look at those exhibits, then it will see that those images are actually quite clearly discernible as child pornography. The jury saw those exhibits too, and it could make that judgment. But the thumbnails are not the beginning and end of the evidence against Mr. Sarabia, as I was alluding to earlier. There's also all of the evidence that he was downloading and viewing files with names indicative of child pornography. And this court has said again and again in Goff and Wagspect and Werner that those names are evidence from which a jury can infer that a defendant is viewing and possessing child pornography knowingly. And so not only were there the folders that he was opening with child pornography, but there were also the logs showing that he was viewing files with names indicative of child pornography, and indeed that he did so with several files of that nature with names indicative of child pornography, not only on one phone, but on one phone and then downloaded and viewed that same file again on a second phone weeks or months later. So from all of that evidence and from the downloads that the FBI was able to get from Mr. Sarabia's IP address, recall this is the IP address registered to him. The other users at that IP address had no child pornography on their phones, and that IP address was password protected or the network was password protected, and there was no evidence of hackers or malware found in the forensic exam. So with that additional evidence, all of those things combined, the jury could readily conclude that Mr. Sarabia knew he was receiving child pornography, knew he was possessing child pornography. If there are no questions about the sufficiency of the evidence, then I will turn next to the question of multiplicity. And the Winstead case that was discussed earlier. Firstly, the Winstead case is completely consistent with this court's published decision in Warner. In Winstead, the court looked at an indictment that is essentially the same sort of indictment that was used in this case. In fact, the same prosecutor who tried Winstead is the prosecutor who tried this case in front of the same court. So when that prosecutor constructed the indictment and the jury charge in this case, she was relying on this court's decision in Winstead. And with respect to whether Winstead was correctly decided, as I had mentioned earlier, Winstead is consistent with Warner. In Warner, there was a multiplicity challenge as to possession counts, and the court looked at the evidence. There was not a distinction in the indictment or made a trial between which images went with which counts. And the court said there were so many images here. And even though some of the images were overlapping, the jury could have found that there were enough to support both possession counts for both materials that were at issue in Warner. So Winstead is not incorrect and it's not an outlier. In fact, the Fourth Circuit's decision in Fall is also consistent with Winstead's approach. And it's also important to realize that there's no distinction in this case between Winstead and this case with respect to when the challenge was raised, because in Winstead, the court explicitly said that it didn't matter that the defendant had raised the challenge late, that it would look at the issue of multiplicity de novo. I'll also address the point that defense counsel raised about whether you can ever have multiple counts, that is receipt and possession counts, related to the same device. And the answer to that, I think, is yes, under the Fourth Circuit's decision in Fall. In that case, there were, it's for sure that, of course, there's Winstead to begin with from this court, but the Fourth Circuit's decision in Fall, there was an overlap between the images that were received and the images that were ultimately found to be possessed. And the court there found that because there were so many transactions, as there were in this case, we know from the forensic evidence that Sarabia downloaded and viewed child pornography on multiple occasions, because there were so many transactions that any of those transactions could have supported a receipt count. And then that later transaction and subsequent possession could support a possession count. So, and that is also consistent with how this court looks at, for instance, firearms. If you receive a firearm and then you receive a second firearm, you can get a receipt conviction for the first firearm and a possession conviction for the second firearm, even if those are both possessed together in the same place and you couldn't have two possession counts for that group of firearms in the end. But if the court ultimately decides that these convictions are multiplicitous, as defense counsel mentioned, under this court's precedent, the only thing that needs to happen is a reformation of the judgment. The possession counts would be vacated without prejudice. And then there's the only part of the sentence that would need to go away would be $200 worth of the special assessment. It is apparent from the court's statements at sentencing and also its written statement in the judgment that it always meant to impose a prison term and supervised release term on the receipt counts only because it was concerned about potential multiplicity implications. So, because the court was explicit about what it was trying to do there, this court can be confident that the only part of the sentence that would need to be reformed here would be that $200 worth of special assessments. If there are no questions about the multiplicity issue, then I'll turn next to the question of the distribution enhancement. There are two separate sentencing guideline provisions at issue here, and the one doesn't seem to be as hotly contested. That is the reduction for receipt only. Every circuit has now held that even unknowing unintentional distribution means that a defendant can't take advantage of that reduction. With respect to the two offense level enhancement for distribution, remember that the standard of review is clear error. That means that the district court's decision, the district court's factual finding, need only be plausible. It need only be a permissible view of the evidence. We're not talking about the standard that the jury needed to use when it was addressing the counts at trial. So under the clear error standard and recognizing the deference that this court says, it said it gives in Lawrence to a district court's findings of fact about knowledge in particular, the district court was well within its rights to find that Mr. Sarabia's distribution of child pornography was knowing. Under Lawrence, all the district court had to find was that Mr. Sarabia knew that he was making child pornography available to others. Not only was he making child pornography available to others, and that's clear from the forensic evidence surrounding the IP address and the examination of the phones, but also Mr. Sarabia admitted to the FBI that he understood how peer-to-peer file sharing worked, that he understood that he was picking up files from other people and that he had used peer-to-peer file sharing on multiple occasions. There's no requirement that the government show what settings Mr. Sarabia had on his peer-to-peer file sharing. The court rejected that idea in Lawrence. So this court can, and the district court in particular, can look to the circumstantial evidence, and all of that circumstantial evidence leads to a permissible view, at least, that Mr. Sarabia knew that when he was using these peer-to-peer file sharing systems that others were able to access the child pornography he had on his phones, just as the FBI was. If there are no questions about the sentencing provisions or the sentencing enhancements, then I'll turn to the condition of supervised release. The challenge here concerns not the entire condition, but only the condition insofar as it concerns Mr. Sarabia's minor children and grandchildren. And with respect to that part of the condition, the challenge is simply not right. It is not just that the condition needs to be imposed, that needs to happen before a condition can be ripe for challenge. Also, there has to be an injury that is not contingent, and this court has looked to the injury on multiple occasions. In the Stamper case, which involved a similar restriction on unsupervised access to minors, and also in the Ellis case where it was unclear what sorts of treatment or medication would be required as part of a treatment program. So it's not just that the condition can be imposed. If that were true, then conditions of supervision would always be right because they'll probably go into effect at some point when the sentence ends. There has to be an injury that's not going to be contingent, and here the injury is entirely contingent because Mr. Sarabia's minor son is going to be 18 by the time he finishes his prison sentence or any conceivable prison sentence he would get under the facts of this case. And as well, he has no grandchildren at this time, and it's not certain that he, or necessarily anything other than contingent, that he will have minor grandchildren at that time, in particular, minor grandchildren whose parents will allow Mr. Sarabia unsupervised access to them to begin with. In any event, the district court's selection of the condition was well within its discretion. It is not correct to say that Mr. Sarabia asked for a decision from the district court as to the facts it was relying on. Mr. Sarabia asked for that with respect to other of the district court's rulings and sentencing, but not this one, and his general objection to the substance of this condition under this court's decision in Tang does not preserve his objection, his procedural objection. And the substance of the condition is well within the court's discretion. Mr. Sarabia has a record of domestic violence, so in combination with his own recognition that his predilection for child pornography means that he shouldn't be around most children, his history of domestic violence means that he does not necessarily have any compunction about victimizing members of his own family. So the district court could, given its broad discretion in imposing terms of supervised release, impose this condition as well. And it is not an absolute ban, as some others have been. This is a restriction on unsupervised association. If Mr. Sarabia is concerned about his living arrangements when he completes his prison term, again, the condition is unright, and the district court can revisit that condition given the circumstances when Mr. Sarabia completes his prison term. If he believes that condition should be revisited, he can file a motion for modification. That's another reason that there's no cause for this court to need to get into this condition at this stage. If there are no questions about the supervised release conditions, I'll briefly mention the scheduling issue by pointing out that the district court has broad discretion to schedule trials, that Mr. Sarabia had weeks with all of the evidence before trial to address anything that he needed. The district court held weekly status conferences to make sure he had everything he needed. And so under all those circumstances,  to keep a trial date as it was scheduled. And- Mr. Williams, you have five minutes on your phone. Do you understand? Yes. And so if there are no further... I apologize, Your Honor, if I was unclear. I was about to urge the court to affirm and yield back the remainder of my time if there are no further questions. Thank you, sir. I apologize, Your Honor. Yes, sir. You may proceed, Ms. Conway. Thank you, Your Honor. I will again address multiplicity first. Winstead, of course, is an unpublished case and Werner dealt with this part of the multiplicity analysis, dealt with that possession statute again. And in Werner, the indictment was specific as to dates. And looking at the evidence, it was clear that the evidence related to different devices for the different date. That is not clear here. And so I would encourage the court to look at Werner. I don't believe it endorses this type of kitchen sink prosecution and then getting multiple convictions based on a bundle of evidence supporting different counts. And indeed, that's what the court commented in Buchanan when it was, I think, looking at the receipt offenses and said, you know, if the government wanted to have separate convictions and punishments, then it needed to prove separate offenses. And it has plenty of tools to do that through how it constructs the indictment, how it presents the evidence, how it asks for those jury instructions. And the government didn't choose to use those tools here, which is fine. It can get one conviction, but it can't get more than that. Fall, again, is a plain error case. And in those plain error cases, they're looking at, again, whether there was any notice or substantial harm often. And the cases often turn on those grounds, which is different than here, where Mr. Sarabia made the issue clear. The government also mentioned the firearms cases, but the unit of prosecution for the firearm is the firearm. And this court has held that as long as there are separate possessions proven, then you can have those separate convictions. But that is different than the unit of prosecution for the possession of child pornography. It's not any firearm or any child pornography. It's any matter containing that child pornography. And that distinguishes the analysis of the possession offense from those firearms cases. And that does bring up just for a moment the burden shifting analysis, which we discussed in our briefs. You know, this court has held in a litany of cases that the defendant has the prima facie burden, and then it shifts back to the government. And here, Mr. Sarabia met that burden with the indictment and the way the case was proven. And the government hasn't rebutted that presumption in the way it chose to try the case. And so there should only be one conviction per phone. Addressing a few points on sufficiency. The evidence about the thumbnails being big often referred to, can they be enhanced? Is this like an image that we can actually see what's going on? And they can be enhanced, but we don't know that they were enhanced. And there is testimony about cited in the reply brief about there could be up to 50 thumbnails on the screen at a time, maybe 14. And in the speed of which all those created, we don't know what was seen. And where that comes into play is the element of knowing at the time of receipt that the image contained a depiction of a minor engaged in sexually explicit conduct. These thumbnails were not exclusively child pornography. The government didn't prove that one folder contained exclusively child pornography. The agents testified about images of children who were not engaged in sexually explicit conduct. That is not criminal. And we don't know what, if anything, Mr. Sarabia was looking for. And so when you look at Dobbs, which is a Tenth Circuit case that has been cited approvingly and discussed in this court's cases, it requires an exacting standard to whether the defendant knew about those thumbnails, which are not in a normal place where you look for images, for pictures. And we don't have any evidence that he knew about this automatic thumbnail generation or even that he knew that that folder had a main image that was child pornography. And so to simply say there was child pornography is a slippery slope to getting convictions of unwitting possessors or receivers of child pornography, which is what this court wants to guard against. And so we ask for the convictions to be vacated. Thank you. Thank you. Recording stopped. And we will call the next case for today.